UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

JODI JAINCHILL,

Plaintiff,

vs.

UBER TECHNOLOGIES, INC.,

Defendant.
_________________________________/

## COMPLAINT

Plaintiff, JODI JAINCHILL, (hereinafter "Plaintiff") through the undersigned counsel, hereby files this Complaint and sues UBER TECHNOLOGIES, INC. (hereinafter referred to as "the Defendan or "Uber"), for declaratory and injunctive relief, attorney fees, expenses and costs (including, but not limited to, court costs and expert fees) pursuant to 42 U.S.C. 12182 et seq., the 2010 ADA Standards (AMERICANS WITH DISABILITIES ACT" or "ADA") and alleges:

## JURISDICTION AND VENUE

1. This Honorable Court is vested with original jurisdiction over this action pursuant to 28 U.S.C. §1331 and §343 for Plaintiff's claims arising under Title 42 U.S.C. §12182 et. seq., based on Defendant's violations of Title III of the Americans With Disabilities Act (hereinafter referred to as the "ADA").
2. Venue is proper in this Court, the Southern Division, pursuant to 28 U.S.C. §1391(B) and rule 3.1 Local Rules of the United States District for the Southern District of Florida in many of the events giving rise to the lawsuit occurred in Broward County, Florida.

## PARTIES

3. Plaintiff, JODI JAINCHILL is sui juris and is a resident of Broward County in the state of Florida. She is an individual with a disability as she is a legally blind person who requires the use of a service animal. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200 or a visual field of 20 degrees or less. Some blind people who meet this definition have limited vision and others have no vision.

4. At the times when Plaintiff attempted to use the services provided by Uber and prior to instituting this action, Plaintiff suffered from a "qualified disability" under the ADA. The Plaintiff personally attempted to use Defendant's services but was denied full and equal access and full and equal enjoyment of the services, goods, and amenities provided by Defendant even though she would be classified as a "bona fide patron". Specifically, Defendant failed to provide services to Plaintiff on several occasions due to the presence of her service animal. Additionally, Plaintiff was charged a cancellation fee and was never provided an opportunity to report the violation when the cancellations occurred. On some occasions, Plaintiff has been forced to demand service from Defendant's drivers, some of which will thereafter provide her services only after she has experienced great distress attempting to persuade the driver to provide her services by advising of the illegality of failing to do so.

5. Specifically, Plaintiff experienced discrimination on the following occasions when Uber cancelled her scheduled trip due to the presence of a service animal: February 3, 2017

and February 14, 2017. Plaintiff experienced this on many other occasions. Plaintiff attempted but was not able to determine how to make a complaint regarding the disability based discrimination using the app on her phone. Instead she had to call to make the complaint. She was advised she would hear back, but never received a return phone call.

6. On the following dates, the Uber driver attempted to refuse services to Plaintiff and only agreed after she recorded the conversation after first advising of her intent to do and then proceeding to tell the driver he or she would be fined and that they were violating federal law by not providing her service based on the presence of her service animal: April 19, 2017 and May 17, 2017. Plaintiff experienced this on many other occasions, but has documentation for the two dates included herein.
7. Plaintiff submitted a formal complaint to Uber, but never received a response.
8. Plaintiff will avail herself of the services offered by Defendant in the future, provided that the Defendant modifies the its' policies and practices to accommodate individuals who have service animals. Plaintiff frequently relies on Defendant's services to attend doctor's appointments, social engagements and work related travel.
9. It is the Plaintiff's belief that said violations will not be corrected without court intervention, and thus the Plaintiff will suffer legal harm and injury in the near future.
10. Defendant is authorized to conduct and is in fact conducting business within the state of Florida. Although Defendant's principal place of business is in California, Defendant employs drivers throughout the state of Florida and maintains a registered agent in Plantation, Florida. Defendant provides public transportation/ taxi services through its UberX and Uber Pool services (referred to collectively herein as "Uber").

11. Most events giving rise to this lawsuit occurred in the state of Florida, Broward County. As the claim involves travel, some events also occurred in Miami Dade County. Bother counties are in the Southern District of Florida. Venue is proper in this Court.

**COUNT I - VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

8. Plaintiff adopts and re-alleges the allegations stated in paragraph “1” through “11” of this complaint as if fully stated herein.

9. On July 26, 1990, Congress enacted the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12101 et. seq. Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993 if Defendant(s) have ten (10) or fewer employees and gross receipts of $500,000 or less. See 42 U.S.C. §12182; 28 C.F.R. §36.508(a).

10. Congress found, among other things, that:

(i) some 43,000,000 Americans have one or more physical or mental disabilities, and this number shall increase as the population continues to grow older;

(ii) historically, society has tended to isolate and segregate individuals with disabilities and, despite some improvements, such forms of discrimination against disabled individuals continue to be a pervasive social problem, requiring serious attention;

(iii) discrimination against disabled individuals persists in such critical areas as employment, housing, public accommodations, transportation, communication, recreation, institutionalization, health services, voting and access to public services and public facilities;

(iv) individuals with disabilities continually suffer forms of discrimination, including outright intentional exclusion, the discriminatory effects of

architectural, transportation, and communication barriers, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, benefits, or other opportunities; and

(v) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our country is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non- productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (9).

11. Congress explicitly stated that the purpose of the ADA was to:

i. provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

ii. provide, clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

iii. invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced on a daily by people with disabilities.

U.S.C. §12101(b)(1)(2) and (4).

12. Title III of the ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce. 42 U.S.C. § 12184(a); 49 C.F.R. § 37.5(a), (f).

13. Defendant is primarily engaged in the business of transporting people within the meaning of Title III of the ADA and its regulations. 42 U.S.C. § 12184(a). Defendant operates a taxi service and specified public transportation within the meaning of Title III of the ADA and its regulations. 49 C.F.R. §§ 37.3, 37.29, App. D § 37.29. The operations of Defendant affect commerce.

14. Title III prohibits private entities providing specified public transportation from imposing eligibility criteria that screen out or tend to screen out individuals with disabilities from fully enjoying the specified public transportation services provided by the entity, unless such criteria can be shown to be necessary for the provision of the services being offered. 42 U.S.C. § 12184(b)(1); 49 C.F.R. § 37.5(f); 28 C.F.R. § 36.301(a).
15. By operating a taxi service that dispatches drivers who unlawfully discriminate and refuse to transport blind individuals with service animals and by operating a customer rating system that, on information and belief, reduces the number of Uber drivers available to Plaintiffs and other blind customers with service animals, Defendant violates Title III of the ADA because Defendant is utilizing eligibility criteria that screen out or tend to screen out Plaintiffs and other blind individuals with guide dogs from fully enjoying the Uber taxi service. 42 U.S.C. § 12184(b)(1); 28 C.F.R. § 36.302(a).
16. It is a violation of Title III for private entities providing specified public transportation to fail to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford the entity's goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. §§ 12184(b)(2)(a), 12182(b)(2)(a)(ii); 49 C.F.R. § 37.5(f); 28 C.F.R. § 36.302(a).
17. By failing to modify practices, policies, and procedures to ensure that drivers of Uber vehicles are properly trained and do not refuse to transport Plaintiffs and other blind individuals with service animals, Defendant is denying Plaintiffs full and equal access to the specified public transportation offered by Defendant.
18. Title III regulations prohibit private entities providing taxi services and other transportation services from discriminating by refusing to provide transportation services to people with disabilities who can physically access vehicles. 49 C.F.R. §§ 37.5(a)-(b),

(f), 37.29(c).

19. Title III regulations also specifically require that private entities providing transportation services permit service animals to accompany people with disabilities in vehicles and facilities. 49 C.F.R. §§ 37.5(f), 37.37(f), 37.167(a), (d); 28 C.F.R. § 36.302(c)(1).
20. Defendant violates Title III of the ADA by refusing to provide transportation services to blind individuals with service animals, including Plaintiffs, who can physically access Uber vehicles. Defendant therefore violate Title III of the ADA by denying Plaintiffs full and equal access to the services, facilities, privileges, advantages, and accommodations of Defendant's Uber transportation service.
21. In addition to operating specified public transportation within the meaning of Section 304 of the ADA, Defendant's Uber service is also a demand responsive system within the meaning of Section 302 of the ADA. 42 U.S.C. § 12182(b)(2)(c). By operating a demand responsive system that dispatches drivers who unlawfully discriminate and refuse to transport Plaintiffs and other blind customers with service animals on the basis of disability, Defendant violates Title III and regulations applicable to demand responsive systems within the meaning of Section 302 of the ADA. 49 C.F.R. §§ 37.3, 37.21(a)(3), 37.167(a), (d); 28 C.F.R. § 36.302(c)(1).
22. The regulations implementing Title III of the ADA require that private entities operating demand responsive transportation systems, including demand responsive systems that are also specified public transportation, must train personnel to proficiency so that they operate vehicles safely and properly assist and treat individuals with disabilities. 49 C.F.R. § 37.173.
23. On information and belief, Defendant also violates Title III of the ADA by failing to train Defendant's personnel to proficiency so that they properly assist and treat Plaintiffs and other blind customers with service animals.
24. Title III of the Americans with Disabilities Act also prohibits discrimination on the basis

of disability by owners, operators, lessees, and lessors of places of public accommodation. 42 U.S.C. § 12182(a).

25. Defendant Uber owns, operates, or leases vehicles providing taxi service and specified public transportation within the meaning of Title III of the ADA and its regulations. 49 C.F.R. §§ 37.3, 37.29, App. D § 37.29. The vehicles providing taxi services owned, operated, or leased by Uber are places of public accommodation within the meaning of Title III of the ADA. 42 U.S.C. §§ 12181(10), 12184(a); 28 C.F.R. § 36.104. Except for modifications to vehicles providing taxi services for the purpose of wheelchair accessibility, all of the antidiscrimination provisions of Title III of the ADA apply to the goods, services, facilities, privileges, advantages, and accommodations of vehicles providing taxi services.

26. Title III prohibits entities that own, operate, lease, or lease to places of public accommodation from excluding, on the basis of disability, individuals with disabilities from participating in or benefiting from the goods, services, facilities, privileges, advantages, or accommodations of public accommodations or otherwise discriminating against a person on the basis of disability. 42 U.S.C. § 12182(b)(1)(A)(i); 28 C.F.R. § 36.202(a).

27. By failing to adopt policies and practices that will prevent or reduce discrimination against blind individuals with service animals in the provision of the Uber taxi service, Defendant violates Title III of the ADA by excluding Plaintiffs on the basis of disability from enjoying the services, privileges, advantages, or accommodations of Uber vehicles.

28. Under Title III, it is also unlawful for entities that own, operate, lease, or lease to places of public accommodation to afford, on the basis of disability, an individual or class of individuals with disabilities with an opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

29. Defendant violates Title III of the ADA by providing Plaintiffs and other blind individuals who use service animals an opportunity to participate in or benefit from the services, privileges, advantages, or accommodations of Uber vehicles that is not equal to that afforded other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

30. Title III further prohibits entities that own, operate, lease, or lease to places of public accommodation from providing, on the basis of disability, an individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals. 42 U.S.C. § 12182(b)(1)(A)(iii); 28 C.F.R. § 36.202(c).

31. By operating a taxi service that dispatches drivers who unlawfully discriminate against and refuse to transport blind individuals with service animals, Defendant violates Title III of the ADA because Uber provides Plaintiffs, on the basis of disability, with services, privileges, advantages, and accommodations of Uber vehicles that are different or separate from that provided to other individuals. 42 U.S.C. § 12182(b)(1)(A)(iii); 28 C.F.R. § 36.202(c).

32. It is a violation of Title III for entities that own, operate, lease, or lease to places of public accommodation to fail to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b)(2)(a)(ii); 28 C.F.R. § 36.302(a).

33. By failing to modify practices, policies, and procedures to ensure that drivers of Uber vehicles are properly trained and do not refuse to transport blind individuals with service animals, Defendant is denying Plaintiffs full and equal access to Uber vehicles.

34. In addition, it is a violation of Title III to utilize, directly or through contractual or other

arrangements, standards or criteria or methods of administration that have the effect of discriminating on the basis of disability. 42 U.S.C. § 12182(b)(1)(d); 28 C.F.R. § 36.204.

35. By administering Defendant's Uber taxi service in a manner that results in blind individuals who use service animals being denied access to the Uber service on the basis of disability, Defendant is denying Plaintiffs full and equal access to the services, privileges, advantages, and accommodations of Uber vehicles because Defendant is utilizing methods of administration that have the effect of discriminating on the basis of disability.

36. The actions of Defendant was and are in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, and regulations promulgated thereunder. Many members of Plaintiff NFB of California, including Plaintiff Kelly, and other blind persons, including Plaintiff Pedersen, have been and continue to be denied access to Defendant's services on multiple occasions when they attempt to use Uber's UberX and Uber Pool transportation service. Defendant has failed to take any equitable steps to remedy Uber's discriminatory conduct, and Defendant's violations of the ADA are ongoing. Defendant's unlawful actions also violate the ADA by deterring members of Plaintiff NFB of California, including Plaintiff Michael Hingson, from attempting to access the Uber taxi service. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiffs will continue to suffer irreparable harm.

37. Plaintiff is entitled to injunctive relief. 42 U.S.C. § 12188.

WHEREFORE, Plaintiff requests the relief sought below.

COUNT II - NEGLIGENCE PER SE

38. Plaintiff adopts and re-alleges the allegations stated in paragraph "1" through "37"of this complaint as if fully stated herein.

39. Under the ADA, Defendant had a duty provide equal access to, and full and equal enjoyment of specified public transportation services provided by Defendant.

40. Defendant breached this duty by failing to provide equal access to and full and equal enjoyment of specified public transportation services to Plaintiff, and has thus discriminated against Plaintiffs as a result thereof.

41. Plaintiff has suffered a harm due to Defendant's actions and inactions. Specifically, Plaintiff was not able to arrive timely to various pre-planned or pre-scheduled activities.

42. To make matters worse, Defendant charged Plaintiff a cancellation fee when Defendant cancelled the ride ordered by Plaintiff due to the presence of her service animal.

43. Defendant provided no effective means to respond to the cancellation by informing Defendant that the ride was cancelled wrongfully due to the presence of the service animal.

44. As a result, Plaintiff was emotionally distraught and embarrassed on numerous occasions.

45. But for Defendant's failure to maintain non-discriminatory policies and procedures, the Plaintiff would not have suffered these harms.

46. Plaintiff is entitled to be compensated for the damages resulting in Defendant's breach of this duty.

WHEREFORE, Plaintiff demands judgment against the Defendant and requests the following injunctive and declaratory relief:

A. That this Honorable Court declares that the public transportation/ taxi service owned, operated and/or controlled by the Defendant is in violation of the ADA;

B. That this Honorable Court enter an Order requiring Defendant to alter its policies to make their services accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA;

C. That this Honorable Court enter an Order directing the Defendant to evaluate and neutralize their policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow the Defendant to undertake and complete corrective procedures for the taxi service;

D. That this Honorable Court grant monetary damages to compensate the Plaintiff for the costs incurred when Defendant wrongfully cancelled scheduled rides and to compensate for the emotional distress, embarrassment and physical suffering experienced due to Defendant's breach;

E. That this Honorable Court award reasonable attorney's fees, all costs (including, but not limited to court costs and expert fees) and other expenses of suit to the Plaintiff; and

F. That this Honorable Court award such other and further relief as it may deem necessary, just and proper.

Dated this 30 day of May 2017.

Respectfully submitted,

**The Advocacy Group**
*Attorneys for Plaintiff*
333 Las Olas Way CU3, Suite 311
Fort Lauderdale, FL 33301
Telephone: (954) 282-1858
Service Email: service@advocacypa.com

By:_*/s/ Jessica L. Kerr*_____
Jessica L. Kerr, Esq.
Fla. Bar No. 92810